**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KRISTOPHER FARRELL JENKINS,

     Plaintiff,

     v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION a/k/a NCAA, et al.,

     Defendants.

Case No. 1:25-cv-02844-DLC

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**</u>
<u>**MOTION TO DISMISS**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 2

        A.     Prior Suits ......................................................................... 3

               1.     *O'Bannon & Keller* ............................................ 3

               2.     *Alston* ............................................................. 4

        B.     Ongoing Litigation ............................................................. 7

        C.     This Case ........................................................................... 8

ARGUMENT .................................................................................................. 9

I.     Jenkins's Claims Are Barred by a Settlement Release and by Res Judicata. ................................................................................................ 9

        A.     *Alston* Forecloses Jenkins's Claims for Damages. ........................... 9

        B.     *O'Bannon* Forecloses Jenkins's Claims for Injunctive Relief. ...................... 11

II.    Jenkins's Claims Are Time-Barred .............................................................. 14

III.   Jenkins Has Not Plausibly Pleaded Injury. ................................................... 21

IV.   Jenkins's Unjust Enrichment Claim Must Be Dismissed. ........................................ 23

CONCLUSION ............................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*A.Q.C. ex rel. Castillo v. United States*,
    656 F.3d 135 (2d Cir. 2011)......................................................................................... 16

*Al George v. Envirotech Corp.*,
    939 F.2d 1271 (5th Cir. 1991) .................................................................................... 17

*Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*,
    463 F. Supp. 3d 409 (S.D.N.Y. 2020)........................................................................ 20

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974).................................................................................................... 18

*Arneil v. Ramsey*,
    550 F.2d 774 (2d Cir. 1977)....................................................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................... 9

*Bellin v. Zucker*,
    6 F.4th 463 (2d Cir. 2021) ........................................................................................... 2

*Blonder-Tongue Lab'ys., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971).................................................................................................... 14

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)....................................................................................... 24

*Brown v. Jones Cnty. Junior Coll.*,
    463 F. Supp. 3d 742 (S.D. Miss. 2020)..................................................................... 11

*Buttry v. Gen. Signal Corp.*,
    68 F.3d 1488 (2d Cir. 1995)................................................................................. 19, 20

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
    56 F.3d 359 (2d Cir. 1995)......................................................................................... 14

*Chalmers v. NCAA*,
    2025 WL 1225168 (S.D.N.Y. Apr. 28, 2025)................................................... *passim*

*Choh v. Brown University*,
    753 F. Supp. 3d 117 (D. Conn. 2024)........................................................................ 19

**Cases (cont.)**

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989)......................................................................................... 22

*Conopco v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996).............................................................................. 14

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984).................................................................................. 12, 13

*Dryer v. NFL*,
    55 F. Supp. 3d 1181 (D. Minn. 2014)............................................................. 22

*DXS, Inc. v. Siemens Med. Sys., Inc.*,
    100 F.3d 462 (6th Cir. 1996) .......................................................................... 17

*Earl v. Novartis Consumer Health, Inc.*,
    2008 WL 4274468 (S.D.N.Y. Sept. 12, 2008)................................................ 21

*Expert Elec., Inc. v. Levine*,
    554 F.2d 1227 (2d Cir. 1977).......................................................................... 14

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)........................................................................................ 12

*Footbridge Ltd. Trust v. Countrywide Financial Corp.*,
    770 F. Supp. 2d 618 (S.D.N.Y. 2011)............................................................ 20

*Gionfriddo v. MLB*,
    94 Cal. App. 4th 400 (2001) .......................................................................... 22

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*,
    2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018)........................................... 16, 17

*Harper v. Ercole*,
    648 F.3d 132 (2d Cir. 2011)........................................................................... 20

*Holland v. JPMorgan Chase Bank, N.A.*,
    2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019)................................................ 20

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..................................................... 16, 17

*In re College Athlete NIL Litig.*,
    2025 WL 1675820 (N.D. Cal. June 6, 2025) ............................................ 7, 20

*In re Int. Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017)...................................................... 14, 20

**Cases (cont.)**

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) ............................................................................... 23

*In re Literary Works in Electronic Databases Copyright Litigation*,
    654 F.3d 242 (2d Cir. 2011) ............................................................................. 11

*In re NCAA Grant-in-Aid Cap Antitrust Litig. ("Alston")*,
    958 F.3d 1239 (9th Cir. 2020) ......................................................................... 1, 5

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litigation ("Alston")*,
    375 F. Supp. 3d 1058 (N.D. Cal. 2019) ......................................................... 6, 10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ................................................... 12

*In re NFL's Sunday Ticket Antitrust Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ........................................................................... 22

*In re Nine W. LBO Sec. Litig.*,
    505 F. Supp. 3d 292 (S.D.N.Y. 2020) ................................................................. 2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................... 11

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*,
    2023 WL 4105105 (D.D.C. June 21, 2023) ...................................................... 18

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) .......................................................................... 16

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) .................................................................... 23

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) ............................................................................... 2

*Lacy v. Principi*,
    317 F. Supp. 2d 444 (S.D.N.Y. 2004) ............................................................... 14

*Laumann v. NHL*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012) ............................................................... 22

*Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*,
    2006 WL 3771005 (S.D.N.Y. Dec. 20, 2006) ..................................................... 2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................... 21

**Cases (cont.)**

*Madison Square Garden, L.P. v. NHL*,
    2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .................................................. 14, 17

*Marshall v. ESPN*,
    668 F. App'x 155 (6th Cir. 2016) ...................................................... 2, 22

*Marshall v. ESPN, Inc.*,
    111 F. Supp. 3d 815 (M.D. Tenn. 2015).......................................... 21, 22, 24

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
    2023 WL 5211054 (S.D.N.Y. Aug. 13, 2023)...................................... 19

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) ........................................................ 23

*Menominee Indian Tribe of Wis. v. United States*,
    577 U.S. 250 (2016)........................................................................... 19

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) .............................................. 24

*NBA v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)............................................................. 22

*NFL v. Alley*,
    624 F. Supp. 6 (S.D. Fla. 1983) .................................................... 22

*O'Bannon v. NCAA*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014) .......................................... *passim*

*O'Bannon v. NCAA*,
    580 U.S. 815 (2016)........................................................................... 4

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ................................................ 3, 4, 5, 13

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
    112 F.4th 74 (2d Cir. 2024) ........................................................ 15

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979)........................................................................... 14

*Phhhoto Inc. v. Meta Platforms, Inc.*,
    123 F.4th 592 (2d Cir. 2024) ........................................................ 15

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)............................................................. 21

**Cases (cont.)**

*Red Apple Media, Inc. v. Batchelor*,
    729 F. Supp. 3d 350 (S.D.N.Y. 2024).........................................................24

*Robertson v. National Basketball Association*,
    622 F.2d 34 (2d Cir. 1980).................................................................10, 11

*Rooney v. Columbia Pictures Indus., Inc.*,
    538 F. Supp. 211 (S.D.N.Y. 1982) ..........................................................21

*Ruffin-Steinback v. dePasse*,
    267 F.3d 457 (6th Cir. 2001) ...................................................................24

*Ruzhinskaya v. Healthport Techs., LLC*,
    311 F.R.D. 87 (S.D.N.Y. 2015) ...............................................................24

*SL-x IP S.à.r.l. v. Merrill Lynch*,
    2023 WL 2620041 (2d Cir. Mar. 24, 2023)..............................................14

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)..................................................................................14

*Smith v. McGinnis*,
    208 F.3d 13 (2d Cir. 2000).......................................................................16

*Stouter v. Smithtown Cent. Sch. Dist.*,
    687 F. Supp. 2d 224 (E.D.N.Y. 2010) .....................................................16

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019).........................................................14, 16, 17

*Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................10

*Washington v. NFL*,
    880 F. Supp. 2d 1004 (D. Minn. 2012).....................................................22

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.*,
    658 F.3d 614 (7th Cir. 2011)....................................................................22

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
    328 F. App'x 695 (2d Cir. 2009) .............................................................20

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) .....................................................23

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    401 U.S. 321 (1971)..................................................................................15

**Statutes**

15 U.S.C. § 15b ................................................................................................... 1, 14

17 U.S.C. § 106 .................................................................................................... 23

17 U.S.C. § 201(a) ............................................................................................... 21

17 U.S.C. § 301(a) ............................................................................................... 22

**Rules**

2d Cir. L.R. 31.2(b)(3)(C) ...................................................................................... 8

**Other Authorities**

3 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 9:56 (6th ed.) .................. 18

## INTRODUCTION

Plaintiff Kristopher Jenkins is the latest in a group of former student-athletes bringing antitrust challenges to NCAA rules that first affected them over a decade ago. In the first of those federal cases, *Chalmers v. NCAA*, 2025 WL 1225168 (S.D.N.Y. Apr. 28, 2025), Judge Engelmayer dismissed with prejudice materially identical claims by a putative class on grounds that fully apply here. There is no reason to chart a new course from Judge Engelmayer's thorough opinion and create an intra-district division of authority.

*First*, all of Jenkins's claims are barred by res judicata and/or prior releases. He was part of a damages settlement class under which he released "any and all past, present and future claims"[1] related to "the NCAA's entire compensation framework." *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1247 (9th Cir. 2020) ("*Alston*"). That broad release precludes Jenkins's damages claims here. *See Chalmers*, 2025 WL 1225168, at *15–*16. To the extent Jenkins states any valid equitable claims, they are barred by the separate injunction entered in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014). The *O'Bannon* class, of which Jenkins was also a member, litigated to final judgment a challenge to NCAA restraints on compensation for the use of student-athletes' name, image, and likeness ("NIL"). *See id.* at 965. Res judicata precludes Jenkins from relitigating the same injunctive relief claim a decade later.

*Second*, all of Jenkins's claims are time-barred. The Clayton Act sets a four-year statute of limitations. *See* 15 U.S.C. § 15b. It is apparent from the Complaint that Jenkins waited too long to bring this action: by his own admission, he first felt the effects of the challenged conduct in 2013. *See* Compl. ¶¶ 294, 297; *Chalmers*, 2025 WL 1225168, at *10. Jenkins does not even attempt to

---

[1] Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-02541-CW, ECF No. 746 at 11–12 (N.D. Cal. Dec. 6, 2017) (*Alston* Settlement).

invoke any exceptions to the statute of limitations that would change this result, but if he had, any such exceptions must be narrowly construed under this Circuit's precedent and would not apply.

*Third*, to the extent that Jenkins's claims are premised on a failure to compensate him for use of his NIL in broadcasts and archival footage, he fails to plausibly plead injury. It is well-settled that participants in live sporting events have no cognizable publicity rights in broadcasts (or redistributions of them). Jenkins thus cannot state a claim of injury stemming from the use of such broadcasts. *See Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016). Moreover, any claims implicating such hypothetical rights in copyrighted footage would be preempted by the Copyright Act.

*Finally*, Jenkins's unjust enrichment claim must be dismissed. He cannot resuscitate his failed antitrust claims by recharacterizing them as equitable claims.

The Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND

The below summarizes the most relevant details of the long history of NCAA litigation on student-athlete NIL and compensation.[2]

---

[2] On a Rule 12(b)(6) motion to dismiss, a court may "consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted). "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (quotation marks omitted). A court may "take judicial notice of public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, 2006 WL 3771005, at *1 (S.D.N.Y. Dec. 20, 2006) (quotation marks omitted). "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." *In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302 n.3 (S.D.N.Y. 2020) (quotation marks omitted).

A.    **Prior Suits**

1.    _O'Bannon & Keller_

On May 5, 2009, Sam Keller, a former college football player, filed suit in the Northern District of California against the NCAA, Electronic Arts, Inc. (EA), and the Collegiate Licensing Company (CLC). He claimed that the defendants had violated his state-law NIL rights by using his NIL in a college football video game. Shortly thereafter, on July 21, 2009, Ed O'Bannon, a former college basketball player, sued the NCAA and CLC in the same court. "The gravamen of O'Bannon's complaint was that the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for the use of their NILs, were an illegal restraint of trade under Section 1 of the Sherman Act." _O'Bannon v. NCAA_, 802 F.3d 1049, 1055 (9th Cir. 2015). O'Bannon also specifically challenged NCAA rules allegedly requiring student-athletes to sign forms "relinquish[ing] all rights in perpetuity for use of their images, likenesses and/or names." 3d Consolidated Am. Class Action Compl., _In re NCAA Student-Athlete Name & Likeness Licensing Litig._, 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832 ¶ 610 (_O'Bannon_ Complaint); _see also id._ ¶¶ 373, 599, 613. The _O'Bannon_ plaintiffs' sweeping claims addressed the use of student-athlete NIL not only in live broadcasts, but also archival footage used for promotional purposes. _See, e.g., id._ ¶¶ 444–76 (DVDs, on-demand video rentals, a "vault" of archival video, "video-clip sales to corporate advertisers and others," "premium content on websites," and photos). The district court consolidated the cases, which proceeded before The Honorable Claudia Wilken.

On November 8, 2013, Judge Wilken denied certification of a damages relief class but certified an injunctive relief class in _O'Bannon_ defined as:

> All _current_ and former student-athletes residing in the United States who compete on, or competed on, an NCAA Division I (formerly known as 'University Division' before 1973) college or university men's basketball team or on an NCAA Football Bowl Subdivision (formerly known as Division I-A until 2006) men's football team and whose images, likenesses and/or names _may be_, or have been, included or could have been included (by virtue of their appearance in a team roster) in _game footage_

> or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon*, 7 F. Supp. 3d at 965 (emphasis added). As noted above, the reference to "game footage" covered both live and archival footage—as confirmed by the inclusion of *former* student-athletes in the *injunctive* class definition. The *O'Bannon* and *Keller* plaintiffs settled their claims against EA and CLC. After the class certification decision, the *O'Bannon* plaintiffs voluntarily dismissed their damages claims against the NCAA with prejudice. *O'Bannon* was subsequently deconsolidated from *Keller*. The *Keller* plaintiffs then settled their claims with the NCAA.

The remaining injunctive claims against the NCAA in *O'Bannon* proceeded to a bench trial. The district court found that the challenged NIL compensation rules violated Section 1 of the Sherman Act in a narrow way. Judge Wilken thus prohibited the NCAA from capping scholarships to student-athletes below the federal "cost of attendance." *Id.* at 1007–08. She also "prohibit[ed] the NCAA from enforcing any rules to prevent its member schools and conferences from offering to deposit a limited share of licensing revenue in trust for their FBS football and Division I basketball recruits, payable when they leave school or their eligibility expires." *Id.* at 1008.

The Ninth Circuit affirmed in part and reversed in part. It affirmed the injunction prohibiting the NCAA from capping scholarships below the cost of attendance. *See O'Bannon*, 802 F.3d at 1075. But it concluded that the district court clearly erred by enjoining the NCAA to permit students "to receive NIL cash payments untethered to their education expenses." *Id.* at 1076. The Supreme Court denied certiorari. *See O'Bannon v. NCAA,* 580 U.S. 815 (2016) (mem.).

2.    *Alston*

In March of 2014, while *O'Bannon* proceeded, a number of other student-athletes filed several different antitrust actions against the NCAA and many of the Division I ("DI") conferences. On June 13, 2014, the Judicial Panel on Multidistrict Litigation consolidated those actions into an MDL under the caption *NCAA Grant-In-Aid Cap Antitrust Litigation* ("*Alston*").

"Rather than confining their challenge to rules prohibiting NIL compensation," the *Alston* plaintiffs "sought to dismantle the NCAA's entire compensation framework." *Alston*, 958 F.3d at 1247. That is, they challenged all NCAA limits on compensation and benefits in excess of the cost of attendance, not just those related to NIL. The district court certified three different injunctive relief classes under Federal Rule of Civil Procedure 23(b)(2). *See* Order, *In re NCAA Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-02541-CW, ECF No. 305 (N.D. Cal. Dec. 4, 2015).

The district court approved a settlement agreement resolving only the damages claims on behalf of three settlement classes on December 6, 2017. As relevant here, one of those classes was the Division I Men's Basketball Class:

> All *current* and former NCAA Division I men's basketball student-athletes who, at any time from March 5, 2010[3] through the date of Preliminary Approval of this Settlement [which occurred on March 21, 2017], received from an NCAA member institution for at least one academic term (such as a semester or quarter) a Full Athletics Grant-In-Aid.

*Alston* Settlement at 2 (emphasis added).

The defendants agreed to pay roughly $208 million, with each class member receiving a payment based on the number of years played (approximately $6,000 for four years). *Id.* at 1. While the *Alston* plaintiffs' claims were not specifically limited to NIL, the measure of relief the class received—the difference between the grant-in-aid scholarships they received and full cost-of-attendance scholarships—was exactly what the injunctive relief judgment in *O'Bannon* (which only challenged NIL restrictions) required to be permitted as NIL-related compensation. *See id.*; *O'Bannon*, 802 F.3d at 1075.

In exchange, the plaintiffs agreed, on behalf of the classes, to a broad release of claims:

---

[3] This date was four years prior to the filing of the initial complaint in *Alston*, to track the applicable statute of limitations for the *Alston* plaintiffs' antitrust claims.

> As of the Settlement Agreement's Effective Date, the Releasors will release the Releasees from *any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for monetary damages of any kind* (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, *arising out of or relating in any way to any of the legal, factual, or other allegations made in Plaintiffs' Actions, or any legal theories that could have been raised on the allegations in Plaintiffs' Actions*.

*Alston* Settlement at 11–12 (emphases added; footnotes omitted).

The "Releasees" entitled to the benefit of the settlement included "the NCAA, each of the Conference Defendants, and each of their respective member institutions (past and present)" as well as many more related parties and entities. *Id.* at 11 n.49. The Releasees were "discharged and released from all Released Claims" and the members of the settlement were "permanently barred and enjoined from instituting or prosecuting any of the Released Claims." *Id.* at 12. The settlement agreement and the judgment were "binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the [settlement classes]." *Id.*

The released claims in the *Alston* damages settlement did not include "claims solely for prospective injunctive relief." *Id*. After a ten-day bench trial on those claims, Judge Wilken found that "preventing unlimited cash payments" was a permissible procompetitive effect of the challenged rules but concluded that goal could be achieved through less restrictive means, specifically "an alternative compensation scheme that would allow limits on the grant-in-aid scholarships at not less than the cost of attendance and limits on compensation and benefits unrelated to education, but that would generally prohibit the NCAA from limiting education-related benefits." *In re NCAA Litig. Grant-In-Aid Cap Antitrust Litigation*, 375 F. Supp. 3d 1058,

1062 (N.D. Cal. 2019) ("*Alston*"). The Ninth Circuit and then the Supreme Court both affirmed. *Alston*, 958 F.3d at 1244, *aff'd*, *NCAA v. Alston*, 594 U.S. 69, 106–07 (2021).

### B.    Ongoing Litigation

Several other antitrust suits against the NCAA and some of the conferences named in this case have been pending for quite some time. Most notably, on June 15, 2020, the attorneys from *Alston* filed a highly publicized class action lawsuit seeking to eliminate all NCAA rules limiting NIL compensation. *See In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.) ("*House*"). Since then, many other cases have been filed addressing student-athlete compensation more generally. *See Hubbard v. NCAA*, No. 4:23-cv-01593 (N.D. Cal.); *Fontenot v. NCAA*, No. 1:23-cv-03076-CNS-STV (D. Colo.); *Carter v. NCAA*, No. 3:23-cv-06325-RS (N.D. Cal.).

In May 2024, the parties announced a settlement, on behalf of a broad class of current and former student-athletes, in three of these four ongoing cases.[4] The court gave final approval to the *House* settlement on June 6, 2025. *See In re College Athlete NIL Litig.*, 2025 WL 1675820 (N.D. Cal. June 6, 2025).

This lawsuit is one of several filed by former student-athletes after the *House* settlement was first announced. Most relevant here is a lawsuit filed by a group of 16 players, in the Southern District of New York, on behalf of a large putative class of former players. *Chalmers*, No. 1:24-cv-05008-PAE (S.D.N.Y). The *Chalmers* plaintiffs sought compensation for the alleged use of their NIL in videos and archival footage of games in which they participated as students.

On April 28, 2025, Judge Engelmayer granted the Defendants' motion to dismiss. *Chalmers*, 2025 WL 1225168. That dismissal rested on two grounds. First, Judge Engelmayer concluded that the plaintiffs' suit was barred by the statute of limitations because no plaintiff had

---

[4] The settlement did not directly resolve *Fontenot* but eliminated the class claims in that case.

"allege[d] that any agreement between a plaintiff and defendants to surrender plaintiff's NIL rights occurred within, or anywhere close to, the four-year period before the filing of this lawsuit." *Id.* at *10.

Second, and alternatively, Judge Engelmayer concluded that the plaintiffs' claims were largely precluded. The plaintiffs' claims for injunctive relief were barred by res judicata due to the injunction awarded to the *O'Bannon* class. *Id.* at *14–*15. Additionally, 10 of the 16 plaintiffs' damages claims were precluded by the class settlement in *Alston* (with the other six plaintiffs not having been part of that class). *Id.* at *15–*16. Judge Engelmayer also dismissed the plaintiffs' unjust enrichment claim, finding it improperly duplicative of the plaintiffs' failed antitrust claims, and plagued by the same substantive flaws. *Id.* at *16–*17.

The *Chalmers* dismissal is currently before the Second Circuit, which has expedited the appeal. *See* Notice of Expedited Appeal, *Chalmers v. NCAA*, No. 25-1307 (2d Cir. June 12, 2025). Briefing is expected to be completed by September 4, 2025. *See id.*; 2d Cir. L.R. 31.2(b)(3)(C).

### C.    This Case

Jenkins is a former student athlete who played DI men's basketball at Villanova University from 2013 to 2017. Compl. ¶ 32. Jenkins has sued the NCAA and six conferences: the Big East Conference, the Pac-12 Conference, the Big Ten Conference, the Big 12 Conference, the Southeastern Conference, and the Atlantic Coast Conference ("Conferences"). *Id.* ¶¶ 33–58. Jenkins alleges that Defendants have "engag[ed] in an overarching conspiracy to: (a) fix the amount that student-athletes may be paid for the licensing, use, and sale of their names, images, and likenesses at zero; (b) foreclose student-athletes from the market for licensing, use, and sale of their names, images, and likenesses entirely; (c) fix the amount that student-athletes may be paid for their athletic services at no more than the value of a scholarship; and (d) limit the quantity of athletic scholarships available in the market for student-athletes' labor services." *Id.* ¶ 27.

Jenkins brings claims under the Sherman Act as well as an unjust enrichment claim. *Id.* ¶¶ 298–318. He seeks actual and treble damages, declaratory relief, and injunctive relief. *Id.* ¶¶ 319–20.

Because Jenkins was a player in November 2013 when Judge Wilken certified the injunctive class in *O'Bannon*, he was a member of that class. *See* Compl. ¶ 32; *O'Bannon*, 7 F. Supp. 3d at 965. Jenkins was also a member of the *Alston* damages settlement class because he played on a Division I men's basketball team during the *Alston* class period, Compl. ¶ 32, and received "from an NCAA member institution for at least one academic term . . . a Full Athletics Grant-In-Aid." *Alston* Settlement at 2. Jenkins opted out of the *House* settlement. Compl. ¶ 165.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For several reasons, Jenkins fails to clear that bar.

## I.    Jenkins's Claims Are Barred by a Settlement Release and by Res Judicata.

### A.    *Alston* Forecloses Jenkins's Claims for Damages.

Because Jenkins was a member of the *Alston* damages settlement class, he released all possible claims for money damages—against the NCAA, the Conferences, and their respective members—"arising out of or relating in any way to any of the legal, factual, or other allegations made in [*Alston*], or any legal theories that could have been raised on the allegations in [*Alston*]." *Alston* Settlement at 11–12.

The release's "broad language easily embraces the claims brought by" Jenkins. *Chalmers*, 2025 WL 1225168, at *15. Jenkins demands "compensation for use of his image, likeness, and/or name and athletic services." Compl. ¶ 312; *see id.* ¶ 303. These claims fall squarely within the

*Alston* complaint, which challenged "the current, interconnected set of NCAA rules that limit the compensation [student-athletes] may receive in exchange for their athletic services." 375 F. Supp. 3d at 1062. At minimum, Jenkins's damages claims are premised on a "legal theor[y] that could have been raised" in *Alston*, particularly given the extensive history of litigation surrounding NCAA compensation rules, including as to NIL, by the time that case was litigated. *Alston* Settlement at 11–12. The release is thus "binding on and ha[s] *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors," *id.* at 12, including this lawsuit.

If the release's plain text were not enough, "[t]he law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (internal citation omitted). The "identical factual predicate" requirement is satisfied here because Jenkins and the *Alston* plaintiffs both challenged NCAA rules limiting compensation generally, which necessarily includes rules limiting compensation for both athletic services and the alleged use of game footage and images. Thus, the "claims brought in this lawsuit clearly could have been raised in that litigation." *Chalmers*, 2025 WL 1225168, at *16.

As Judge Engelmeyer recognized in *Chalmers*, *see id.*, the Second Circuit's decision in *Robertson v. National Basketball Association*, 622 F.2d 34, 35 (2d Cir. 1980), underscores the point. There, the court held that a professional basketball player's individual antitrust suit was barred by an earlier class settlement of claims challenging the same rules. Although the plaintiff argued that his suit was "unique[]" because he sought to compute compensation differently than the earlier plaintiffs, that did "not remove it from the orbit of the challenged rule. The dispute

between the parties in both cases involved the concept of the rule, not the manner in which compensation was computed." *Id.*

Nor could Jenkins escape the settlement's preclusive effect by arguing that he challenges *ongoing* violations of his NIL rights by Defendants. *See, e.g.*, Compl. ¶¶ 299, 309 (alleging a "continuing" conspiracy). The Second Circuit rejected that argument in *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), which concerned a class settlement of copyright infringement claims. There, the settlement objectors claimed that releasing *future* infringement claims was improper because "future infringements are distinct harms giving rise to independent claims of relief, with factual predicates that are different from authors' past infringement claims." *Id.* at 248. The Second Circuit disagreed: "[R]egardless of whether future infringements would be considered independent injuries," they fell within the releases because the plaintiffs' complaint had sought "injunctive relief for future uses, and therefore contemplate[d] these alleged future injuries." *Id.*; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *25 (E.D.N.Y. Dec. 16, 2019). Just so here.

## B.    *O'Bannon* Forecloses Jenkins's Claims for Injunctive Relief.

Beyond damages, Jenkins seeks injunctive relief as well as a declaratory judgment "declaring as void the NCAA's Bylaws that operate to impose restrictions on the compensation Division I student-athletes can receive from the schools, conferences, or third parties for their NIL rights or athletic services." Compl. ¶¶ 319–20. As an initial matter, Jenkins lacks standing to attempt to enjoin NCAA rules prohibiting compensation for athletic services or for NIL for *current* student-athletes, because those rules do not apply to him as a *former* student-athlete. *See, e.g.*, *Brown v. Jones Cnty. Junior Coll.*, 463 F. Supp. 3d 742, 754 (S.D. Miss. 2020) (plaintiff lacked standing to challenge a school's policies because he was "no longer a student" and was "no longer subject to [the school's] policies, and a preliminary injunction [would] not redress his injury").

The only injunctive claims Jenkins could conceivably bring are for the continued alleged use of his NIL. But those claims are barred by res judicata under the *O'Bannon* injunction. The final judgment in *O'Bannon* resolved claims for injunctive relief on behalf of a certified class that covered, as relevant here:

> [A]ll *current* and former student-athletes residing in the United States who compete on, or competed on, an NCAA [DI] men's basketball team . . . and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in game footage or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon*, 7 F. Supp. 3d at 965 (emphasis added). That judgment—entered in a case challenging, among other things, "the set of rules that bar student-athletes from receiving a share of the revenue that the NCAA and its member schools earn from the sale of licenses to use the student-athletes' names, images, and likenesses in videogames, live game telecasts, and other footage"—bars Jenkins from relitigating the same issues. *Id.* at 963.

Jenkins was a member of the certified injunctive class in *O'Bannon*. He alleges that the NCAA rules in effect during his playing days denied him the right to be compensated by his school and conference for use of his NIL. Compl. ¶ 255. And he was a current DI basketball player on November 8, 2013, when the district court certified the class. *See id.* ¶ 272; *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 5979327, at *10 (N.D. Cal. Nov. 8, 2013) (*O'Bannon* Class Certification Order). Jenkins is accordingly bound by the district court's judgment in *O'Bannon*. *See Chalmers*, 2025 WL 1225168, at *14–*15 (concluding that similar claims were foreclosed by *O'Bannon*).

"[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). That judgment "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The

12

Plaintiffs in *O'Bannon* challenged rules and practices precluding them from being compensated for the use of their NILs in "(1) live game telecasts, (2) sports video games, and (3) game rebroadcasts, advertisements, and other archival footage." *O'Bannon*, 802 F.3d at 1057. The Ninth Circuit conclusively resolved that challenge and delineated the forms of additional compensation the antitrust laws required the NCAA to permit. *Id.* at 1075–76.

That is the precise injunctive relief claim that Jenkins seeks to relitigate here. He argues that "[i]n the absence of the challenged restraints," student-athletes "would be able to offer group licenses to their schools and conferences, which could in turn package them to broadcast and other companies with school and conference rights," and that NCAA rules in effect when he was a student "deprived [him] of the opportunity to receive licensing compensation for his broadcast NIL rights that he otherwise would have received from Villanova and the Big East." Compl. ¶ 255. Those are exactly the same rules and practices challenged in *O'Bannon. See O'Bannon* Compl. ¶¶ 373, 599, 610, 613 (challenging assignment of rights), ¶¶ 444–76 (listing overlapping challenges to uses of those rights by the NCAA). Indeed, Jenkins's Complaint practically quotes word-for-word the district court's description of the plaintiffs' arguments in *O'Bannon*. *See* 7 F. Supp. 3d at 968 (noting that plaintiffs argued that "in the absence of the NCAA's challenged rules" student-athletes "would be able to join together to offer group licenses, which they would then be able to sell to their respective schools, third-party licensing companies, or media companies seeking to use student-athletes' names, images, and likenesses"). Jenkins is therefore bound by the *O'Bannon* judgment and precluded from relitigating the *O'Bannon* injunction here. *Cooper*, 467

U.S. at 874; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] class action approved under Rule 23" binds all class members).[5]

## II.    <u>JENKINS'S CLAIMS ARE TIME-BARRED.</u>

Jenkins's Sherman Act claims are based on alleged conduct that occurred, and that first allegedly injured him, when he enrolled at Villanova over 12 years ago. Compl. ¶ 32. The Sherman Act has a four-year statute of limitations. *See* 15 U.S.C. § 15b; *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 487 (S.D.N.Y. 2017). Accordingly, his antitrust claims are untimely. *See, e.g.*, *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019); *SL-x IP S.à.r.l. v. Merrill Lynch*, 2023 WL 2620041, at *2–*4 (2d Cir. Mar. 24, 2023).[6]

---

[5] Although the *O'Bannon* plaintiffs did not name the Conferences as defendants, the *O'Bannon* judgment still bars Jenkins's claims against both the NCAA and the Conferences under the doctrines of res judicata and defensive nonmutual collateral estoppel. "When a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant." *Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995). Jenkins alleges the Conferences are each "conference members" of the NCAA and, like the *O'Bannon* plaintiffs, challenges rules that are implemented through the NCAA. Compl. ¶¶ 38–60. The Conferences thus have a "sufficiently close relationship" with the NCAA to "justify [claim] preclusion." *Central Hudson*, 56 F.3d at 368; *see Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233–34 (2d Cir. 1977) (concluding privity existed between a representative association and one of its members for preclusion purposes). Further, so long as the plaintiff had "a full and fair opportunity to litigate" an issue in an earlier suit, *Blonder-Tongue Lab'ys., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971), the doctrine of defensive nonmutual collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (internal citation omitted); *see also Chalmers*, 2025 WL 1225168, at *14 ("*O'Bannon* defendants included the NCAA and its 'co-conspirators' or 'licensees,' terms which (particularly the first) squarely embrace the conferences and schools which are alleged here to be its co-conspirators.").

[6] The Clayton Act's four-year statute of limitations governs damages claims. *See* 15 U.S.C. § 15b. However, for injunctive relief claims, "where the conduct forming the basis for the Complaint occurs outside of the analogous statute of limitations period, the doctrine of laches presumptively bars a plaintiff's claims absent a showing that delay was excusable and caused no prejudice to the defendant." *Madison Square Garden, L.P. v. NHL*, 2008 WL 4547518, at *10 (S.D.N.Y. Oct. 10, 2008) (citing *Conopco v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)). Under that presumption, it is Jenkins's burden to show why his claims are not time barred. *See Conopco*, 95 F.3d at 191. Jenkins has not alleged any facts that would remotely meet that burden.

"A cause of action for an alleged antitrust violation accrues when a defendant commits an act that injures" the plaintiff. *Phhhoto Inc. v. Meta Platforms, Inc.,* 123 F.4th 592, 603 (2d Cir. 2024) (quotation marks omitted); *see also, e.g.*, *Olivieri v. Stifel, Nicolaus & Co., Inc*., 112 F.4th 74, 87 (2d Cir. 2024) (noting that "[w]hen a claim 'accrues'—that is, when the limitations period starts to run—depends on the nature of the claim" and pointing to antitrust law as an example that "[s]ome claims arise *when the defendant commits the injurious act*" (emphasis added) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)).

The alleged conduct Jenkins challenges under the Sherman Act is clear: "the illegal and unfair restraints put in place by the NCAA and required by the Conference Defendants and imposed upon the member universities." Compl. ¶ 297; *see also id.* ¶ 59 (naming as additional co-conspirators those who "voted to adopt the rules prohibiting NIL compensation and compensation for athletic services, as well as the rules limiting the number of athletic scholarships available to college athletes, and thus agreed to impose the restraints on trade described herein"). Those rules, however, were adopted well before Jenkins arrived at Villanova, and he himself asserts that the rules were "strictly enforced . . . throughout the entirety of [his] career from 2013-2017." *Id*. ¶ 60; *see also, e.g.*, *id.* ¶ 65 (describing "[t]he NCAA's rules in force during Mr. Jenkins' Collegiate Athletic Career"); *id.* ¶ 68 (alleging that "the NCAA rules restrict[ing] virtually all NIL-related opportunities and compensation that athletes can obtain through outside employment" were in place "during the entirety of Mr. Jenkins' career as a basketball player at Villanova from 2013-2017"); *id.* ¶ 296 ("The NCAA's conspiracy directly harmed him, limiting his ability to profit from his extraordinary talent and popularity *during his time as a college athlete*." (emphasis added)).

In other words, taking Jenkins's own allegations as true, the alleged conduct—Defendants' alleged adoption of the challenged rules—occurred more than 12 years ago. And Jenkins was allegedly injured by those rules the moment he arrived at Villanova—again more than 12 years

ago. That is all well outside the four-year statute of limitations governing his claims. *See Haier Am. Trading, LLC v. Samsung Elecs., Co.*, 2018 WL 4288617, at *6 (N.D.N.Y. Sept. 7, 2018); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 230 (E.D.N.Y. 2003).

Jenkins does not even attempt to invoke any exceptions to the limitations period. Regardless, any such attempts would fail as a matter of law. "[S]tatutes of limitations protect important social interests in certainty, accuracy, and repose," so exceptions are "a drastic remedy applicable only in rare and exceptional circumstance[s]." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (citations and internal quotations omitted); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). No such circumstances are present here.

First, this Circuit's precedent forecloses Jenkins from relying on the "continuing violations" exception. *See Chalmers*, 2025 WL 1225168, at *8 ("The continuing violation doctrine, however, is 'heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.'" (quoting *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 230 (E.D.N.Y. 2010) (collecting cases))). That exception requires a plaintiff to identify an "overt act" that occurred within the limitations period, rather than merely point to supposed continued effects of allegedly anticompetitive acts that occurred long ago. *US Airways*, 938 F.3d at 68. Specifically, the overt act must constitute a "separate antitrust violation[]" and must inflict a new and accumulating antitrust injury—and specifically, "a continuing injury *to competition*, not merely a continuing pecuniary injury to a plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1055–56 (5th Cir. 1982) (citation and internal quotation marks omitted) (emphasis added).

Jenkins can point to no such act. The only conduct by Defendants that Jenkins alleges is the continued existence and enforcement of NCAA rules adopted before he enrolled at Villanova. That is not an "overt act." In *US Airways*, the plaintiff challenged a contract under the Sherman

Act, and argued that "each allegedly supracompetitive price" that it paid under the contract was a new violation that extended the statute of limitations. 938 F.3d at 68. The court rejected that argument, reasoning that each payment flowing from the original contract did not qualify as "a new and independent act that [was] not merely a reaffirmation of a previous act." *Id.* (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996)). Here, the denial of compensation for playing basketball and the enforcement of rules against NIL compensation that Jenkins alleges were, at best, reaffirmations of the NCAA rules that were already in place when he first became a student. That makes them merely the "'inertial consequences of some pre-limitations action,' which do not satisfy the requirements for a continuing violation." *Ciprofloxacin Hydrochloride*, 261 F. Supp. 2d at 229 (quoting *Al George v. Envirotech Corp.,* 939 F.2d 1271, 1275 (5th Cir. 1991)); *see also Haier*, 2018 WL 4288617, at *6–*7.

Jenkins could not avoid this result by arguing that the relevant rules were renewed or reenacted while he was a student. The mere renewal of existing rules, without more, does not restart the limitations period. As one example, in *Madison Square Garden, L.P. v. NHL*, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008), the court rejected an antitrust challenge to longstanding NHL rules requiring clubs to grant exclusive rights to the NHL. The plaintiff had renewed its grant within the limitations period and claimed that doing so justified his new challenge. *Id.* at *5. The court disagreed, concluding that the license renewal was not an "overt act" that restarted the limitations period but a "mere affirmation" of the previous act. *Id.* at *10; *see Chalmers*, 2025 WL 1225168, at *10 (rejecting similar argument).

Jenkins also cannot plausibly claim that continued use by Defendants of any archival footage or other material constitutes a continuing violation. *See* Compl. ¶ 93 (alleging that Jenkins "will continue to incur" injuries given "the ongoing nature of the NCAA's and Big East's use of Mr. Jenkins' NIL"); *see also id.* ¶¶ 286, 289 (alleging continued use of Jenkins's NIL by the NCAA

and Big East). Here too, Judge Engelmayer decisively rejected this argument in *Chalmers*. The plaintiffs there, 16 former student-athletes who played DI men's basketball between 1994 and 2016, attempted to allege a continuing violation on the claimed ongoing use of their NIL in advertisements and archival footage pursuant to alleged agreements that the plaintiffs had entered into when they were student-athletes. Judge Engelmayer rejected the plaintiffs' argument that the NCAA's "alleged continued exploitation of the NIL rights acquired pursuant to these agreements" constituted a continuing violation. *Chalmers*, 2025 WL 1225168, at *10. Instead, "the commercial usage of their NILs was merely a manifestation of these long-ago agreements, entered into while plaintiffs were in college," and the plaintiffs had "not allege[d] that any agreement between a plaintiff and defendants to surrender plaintiff's NIL rights occurred within, or anywhere close to, the four-year period before the filing of this lawsuit." *Id.* at *10. So too here.

The tolling rule recognized in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), cannot save Jenkins's claims either. *American Pipe* provides tolling during the pendency of a past class action only when the plaintiff "possess[es] a claim that the prior class action asserted" and "press[es] that claim against an individual whom the purported class action named as a defendant." *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2023 WL 4105105, at *7 (D.D.C. June 21, 2023) (quoting 3 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 9:56 (6th ed.)). The only possible source of such tolling here would be the putative class action in *House*, and that case was filed far too late to benefit Jenkins. Even assuming *House* raises a claim Jenkins purports to assert, tolling would begin only as of June 15, 2020, when the *House* complaint was filed. But for statute of limitations purposes, what matters is when the anticompetitive conduct occurred and first allegedly injured the plaintiff. For Jenkins, that was no later than 2013, *seven years* before the *House* complaint was filed. Therefore, tolling potentially beginning in 2020 provides no basis for a claim.

The reasoning in *Choh v. Brown University*, 753 F. Supp. 3d 117 (D. Conn. 2024), illustrates why *American Pipe* tolling would not benefit Jenkins even if it were to apply. *Choh* involved a challenge to an agreement among Ivy League schools not to award athletic scholarships. One plaintiff in the case, Tamenang Choh, had graduated from Brown University in 2022 and filed suit in 2023. *Id.* 123–24, 135. The court dismissed his claim as untimely, concluding that Choh's claim accrued when he *enrolled* at Brown in 2017 and was not awarded an athletic scholarship pursuant to the Ivy League Agreement. *Id.* at 136. The decision not "to award him an athletic scholarship or compensation for athletic services during the remainder of his time at Brown was simply a manifestation of . . . Brown's decision to enter into the most recent version of the Ivy League Agreement." *Id.* Thus, even though Choh had attended Brown for several years within the limitations period, his claim was nonetheless time-barred because he "first felt the adverse impact of the Ivy League Agreement no later than when he enrolled at Brown University in September 2017." *Id.* The same logic applies here. Jenkins's claim accrued, and the statute of limitations began to run, when he enrolled at Villanova in 2013. He needed to file by 2017, eight years ago, and well before *House* began to provide any form of tolling.

Last, Jenkins cannot rely on equitable exceptions to the statute of limitations. "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Jenkins cannot make any such allegations. *See McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 2023 WL 5211054, at *8 (S.D.N.Y. Aug. 13, 2023). Similarly, the equitable tolling defense requires showing that a plaintiff "has been pursuing his rights diligently" but "some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation and internal quotation marks omitted).

Jenkins makes no allegation of any such "sever[e] . . . obstacle impeding compliance with a limitations period" that "*caused* him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (emphasis added).

More broadly, neither doctrine could possibly justify Jenkins's *12-year delay* in filing suit. Given the extensive publicity and litigation on NIL and player compensation issues—including multiple suits in which *Jenkins was a class member*—Jenkins "had every basis, in real time, to smell a rat." *In re Interest Rate Swaps*, 261 F. Supp. 3d at 489 (rejecting equitable tolling argument); *see, e.g.*, *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 698 (2d Cir. 2009); *Buttry*, 68 F.3d at 1494–95. For all these reasons, his claims are untimely.

Finally, Jenkins's claims as to the Big East Conference are untimely for another reason. While Jenkins's claims are untimely as to all Defendants given that *American Pipe* tolling is wholly inapplicable here, the Big East was never even a defendant in *House*. *See generally In re College Athlete NIL Litig.*, 2025 WL 1675820, at *1–*4 (reciting procedural history). The Second Circuit resolved decades ago that "nothing in *American Pipe* suggests that the statute [of limitations] be suspended from running in favor of a person not named as a defendant in the class suit, and we decline so to extend the rule." *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977). Later decisions from this Court have all followed this rule. *See, e.g.*, *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 428–29 (S.D.N.Y. 2020) (rejecting argument that *American Pipe* tolling applied where "each of the New Defendants is an affiliate of a named defendant" in the class action); *Holland v. JPMorgan Chase Bank, N.A.*, 2019 WL 4054834, at *12 (S.D.N.Y. Aug. 28, 2019) ("It is well established in this Circuit that the statute of limitations cannot be suspended from running in favor of a person not named as a defendant in [a] class suit."); *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, 770 F. Supp. 2d 618, 624 n.1 (S.D.N.Y. 2011) ("*American Pipe* tolling does not extend to persons not named as defendants in the prior

class action suit."); *Earl v. Novartis Consumer Health, Inc.*, 2008 WL 4274468, at *4 (S.D.N.Y. Sept. 12, 2008) (same). Therefore, while Jenkins's claims are at least untimely by three years as to all the other Defendants, they are stale by more than eight years as to the Big East.

## III. Jenkins Has Not Plausibly Pleaded Injury.

Jenkins's antitrust claims fail for an additional, independent reason: he does not plausibly allege constitutional standing and antitrust injury. An antitrust plaintiff must plead and prove both. Constitutional standing requires an "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted). To prove antitrust injury, a plaintiff must allege facts showing "injury in fact to the plaintiff's business or property caused by the antitrust violation" that is "attributable to the anticompetitive aspect of the practice under scrutiny." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121–22 (2d Cir. 2007).

To the extent Jenkins is claiming any injury related to his appearance in sports broadcasts, live or archival, his claims fail under well-established law. Jenkins has no legally cognizable rights in such footage, so he cannot establish injury. *See Marshall v. ESPN, Inc.*, 111 F. Supp. 3d 815, 835 (M.D. Tenn. 2015) (concluding that participants in a broadcast "cannot have been injured by a purported conspiracy to deny them the ability to sell non-existent rights"), *aff'd*, *Marshall*, 668 F. App'x at 156–57; *see also Rooney v. Columbia Pictures Indus., Inc.*, 538 F. Supp. 211, 230 (S.D.N.Y. 1982).

As an initial matter, Jenkins has not alleged—and cannot allege—any plausible basis for claiming copyright interests in any broadcast footage of NCAA games. The copyright in a protected work "vests . . . in the author or authors of the work." 17 U.S.C. § 201(a). Live athletic events "are not 'authored' in any common sense of the word" because they are "competitive and

have no underlying script." *NBA v. Motorola, Inc.*, 105 F.3d 841, 846–47 (2d Cir. 1997). Players'

in-game performances thus are not "work[s] of authorship" establishing ownership rights within

the meaning of the Copyright Act. *Id*. By contrast, *broadcasts* and *recordings* of sports events are

copyrightable as audiovisual works that are fixed in a tangible medium of expression. *Id.* at 847.

The authors of such works are the broadcasters, promoters, and/or producers. *Cmty. for Creative

Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Motorola*, 105 F.3d at 847; *accord In re NFL's

Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1154 (9th Cir. 2019). A copyright holder's exercise

of rights granted by the Copyright Act is not anticompetitive conduct. *See Washington v. NFL*, 880

F. Supp. 2d 1004, 1005–07 (D. Minn. 2012).

Nor does Jenkins have any right of publicity in those broadcasts. State statutes and judicial

decisions uniformly recognize that all rights to license a sporting event lie exclusively with the

event's promoter or producer—meaning that *participants* have no right of publicity in a broadcast

or rebroadcast of a sporting event. *See, e.g.*, *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658

F.3d 614, 624–28 (7th Cir. 2011); *Laumann v. NHL*, 907 F. Supp. 2d 465, 485 (S.D.N.Y. 2012).

Simply broadcasting or rebroadcasting all or portions of a sports event does not implicate players'

publicity rights. *See, e.g.*, *Marshall*, 668 F. App'x at 157; *Marshall*, 111 F. Supp. 3d at 825–27;

*Dryer v. NFL*, 55 F. Supp. 3d 1181, 1195–1200 (D. Minn. 2014), *aff'd*, 814 F.3d 938 (8th Cir.

2016); *NFL v. Alley*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. MLB*, 94 Cal. App. 4th

400, 406–18 (2001).

What is more, the Copyright Act would preempt whatever state-law publicity claims

Jenkins might hope to raise. Any "legal or equitable rights" in such footage that are equivalent to

the exclusive rights granted to the copyright holder "are governed exclusively" by the Copyright

Act, such that "no person is entitled to any such right or equivalent right in any [protected] work

under the common law or statutes of any State." 17 U.S.C. § 301(a); *see Motorola*, 105 F.3d at

848 n.4. The exclusive rights protected by the Copyright Act include the right to reproduce, distribute, display, and prepare derivative works of the copyrighted work. 17 U.S.C. § 106. Thus, claims based on allegedly unauthorized use of a plaintiff's NIL are preempted absent allegations that such use was "separate from, or beyond, the rebroadcasting, in whole or in part, of the copyrightable material" featuring the plaintiff. *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 297 (2d Cir. 2022); *see also In re Jackson*, 972 F.3d 25, 40 (2d Cir. 2020). To avoid preemption, Jenkins would have to show that Defendants "manipulated or imitated" his identity or likeness, *Melendez*, 50 F.4th at 306, or used his NIL "in a manner that implies [his] endorsement, sponsorship, or approval" of an entity, product, or opinion that is independent from "the copyrighted work itself," *Jackson*, 972 F.3d at 48, 52. Jenkins makes no such allegations. Thus, any potential state-law right of publicity would be preempted.

**IV.    Jenkins's Unjust Enrichment Claim Must Be Dismissed.**

Jenkins provides no hint as to what source of law forms the basis of his unjust enrichment claim. *See* Compl. ¶¶ 316–18. In any event, it fails and must be dismissed. As Judge Engelmayer concluded in *Chalmers*, a plaintiff cannot salvage a failed antitrust claim by simply recharacterizing it as an unjust enrichment claim. *See Chalmers*, 2025 WL 1225168, at *16 ("Where the basis for an unjust enrichment claim is a violation of a separate statute, dismissal of the claim based on that statute requires dismissal of the unjust enrichment claim."); *see Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 424 (E.D.N.Y. 2013); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995). That principle applies with particular force here because Jenkins's unjust enrichment claim faces the same obstacles as his antitrust claims.

First, Jenkins's claims would be barred by the *Alston* settlement, which released his right to bring all claims "for monetary damages of *any kind* . . . under the laws of *any jurisdiction*." *Alston* Settlement at 11–12 (emphases added). Because Jenkins seeks compensation via

"disgorgement of profits," Compl. ¶ 318, the release unequivocally encompasses Jenkins's unjust enrichment claim. *Chalmers*, 2025 WL 1225168, at \*17.

Second, the claim is untimely. If, for example, the claim is brought under New York law, the statute of limitations would likely be three years (and, at most, six years), and in either case is untimely and thus barred by the statute of limitations. *See Chalmers*, 2025 WL 1225168, at \*17; *see also, e.g.*, *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 109 (S.D.N.Y. 2015).

Finally, any unjust enrichment claim premised on theories regarding nonexistent rights of publicity and copyright ownership would fail for the same reasons as antitrust claims with the same grounding. *See, e.g.*, *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462–63 (6th Cir. 2001); *Marshall*, 111 F. Supp. 3d at 837. The Copyright Act also preempts claims that the defendant was unjustly enriched by use of a copyrighted work. *See, e.g.*, *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304–08 (2d Cir. 2004); *Red Apple Media, Inc. v. Batchelor*, 729 F. Supp. 3d 350, 366–68 (S.D.N.Y. 2024); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 112–14 (E.D.N.Y. 2022).

## CONCLUSION

The Complaint should be dismissed in its entirety.

DATED: July 3, 2025

Respectfully submitted,

By: */s/ Whitty Somvichian*
Whitty Somvichian (*pro hac vice*)
Ashley K. Corkery (*pro hac vice*)
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: (415) 693-2000
Fax: (415) 693-2222
wsomvichian@cooley.com
acorkery@cooley.com

Mark Lambert (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
mlambert@cooley.com

*Attorneys for Defendant Pac-12 Conference*

By: */s/ Rakesh N. Kilaru*
Rakesh N. Kilaru (*pro hac vice*)
Calanthe Arat (*pro hac vice* forthcoming)
Daniel Epps (*pro hac vice*)
Matthew Skanchy (*pro hac vice* forthcoming)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
depps@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

*Attorneys for Defendant National Collegiate Athletic Association*

By: */s/ Britt M. Miller*
Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

Gina L. Del Tatto
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
gdeltatto@mayerbrown.com

*Counsel for Defendant The Big Ten Conference, Inc.*

By: */s/ Natali Wyson*
Natali Wyson (*pro hac vice*)
Angela C. Zambrano (*pro hac vice*)
Chelsea Ann Priest (*pro hac vice*)
Penny Packard Reid
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400
nwyson@sidley.com
angela.zambrano@sidley.com
cpriest@sidley.com
preid@sidley.com

Benjamin R. Nagin
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
bnagin@sidley.com

*Attorneys for Defendant The Big 12 Conference, Inc.*

By: */s/ Michael S. Sommer*
Michael S. Sommer
Alexander Luhring
**WILSON SONSINI GOODRICH &
ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 497-7728
msommer@wsgr.com
aluhring@wsgr.com

*Attorneys for Defendant Southeastern
Conference*

By: */s/ Christopher S. Yates*
Christopher S. Yates (*pro hac vice* forthcoming)
Aaron Chiu (*pro hac vice* forthcoming)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157
Fax: (415) 395-8095
chris.yates@lw.com

Anna M. Rathbun (*pro hac vice* forthcoming)
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
anna.rathbun@lw.com

*Attorneys for Defendant Atlantic Coast Conference*

By: */s/ Kyle A. Casazza*
Kyle A. Casazza
Justin B. Cohen
**PROSKAUER ROSE LLP**
2029 Century Park East, Ste 2400
Los Angeles, CA 90067
Tel: (310) 284-5677
kcasazza@proskauer.com
jbcohen@proskauer.com

Timothy Burroughs
Eleven Times Square
New York, NY 10036
Tel: (212) 969-2900
tburroughs@proskauer.com

*Attorneys for Defendant The BIG EAST
Conference, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum contains **8,317** words, excluding portions permitted to be excluded by Local Rule 7.1(c). This was determined by word-count software included in Microsoft Word. I further certify that this memorandum complies with the word-count limitations of Local Civil Rule 7.1(c) and section 4.B of Judge Cote's individual practices.

DATED:  July 3, 2025

By: */s/ Rakesh Kilaru*

Rakesh Kilaru
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com

*Counsel for National Collegiate Athletic Association*