```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
KRISTOPHER FARRELL JENKINS,               :
                                         :
                      Plaintiff,         :
                                         :    25cv2844 (DLC)
              -v-                        :
                                         :    OPINION AND
NATIONAL COLLEGIATE ATHLETIC              :        ORDER
CONFERENCE, et al.,                      :
                                         :
                      Defendants.        :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:

Kevin Thomas Duffy, Jr
Kevin T Duffy Jr - Attorneys at Law LLC
165 West Putnam Avenue
Suite 2b
Greenwich, CT 06903

For defendant National Collegiate Athletic Conference:

Rakesh Kilaru
Calanthe Arat
Daniel Epps
Matthew Skanchy
Wilkinson Stekloff LLP
2001 M Street NW
Ste 10th Floor
Washington, DC 20036

For defendant PAC 12 Conference:

Mark Lambert
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Whitty Somvichian
Ashley K. Corkery

```
Cooley LLP
3 Embarcadero Center
Ste 20th Floor
San Francisco, CA 94111-4004
```

For defendant Big Ten Conference Inc.:

```
Britt Marie Miller
Daniel Fenske
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Gina Lauren Del Tatto
Mayer Brown LLP
1221 Avenue of the Americas, 14th Floor
New York, NY 10020-1001
```

For defendant Big 12 Conference Inc.:

```
Angela C. Zambrano
Chelsea Ann Priest
Natali Wyson
Penny Packard Reid
Sidley Austin LLP
2021 McKinney Ave.
Suite 2000
Dallas, TX 75201

Benjamin Robert Nagin
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
```

For defendant Southeastern Conference:

```
Alexander Luhring
Michael S Sommer
Wilson Sonsini Goodrich & Rosati P.C.
31 West 52nd Street
Ste Fifth Floor
New York, NY 10019

Kathryn Reilly
Natalie West
Wheeler Trigg O'Donnell LLP
```

```
370 17th Street
Suite 4500
Denver, CO 80202-5647
```

For defendant Atlantic Coast Conference:

```
Aaron Chiu
Christopher S Yates
Latham & Watkins LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111

Anna M Rathbun
Latham & Watkins
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
```

For defendant Big East Conference, Inc.:

```
Justin B Cohen
Kyle Alexander Casazza
Proskauer Rose LLP
2029 Century Park East
Ste 2400
Los Angeles, CA 90067

Timothy Burroughs
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
```

DENISE COTE, District Judge:

Kristopher Farrell Jenkins has sued the National Collegiate Athletic Conference ("NCAA") and others for antitrust violations he experienced eight years ago as a collegiate basketball player. The defendants have moved to dismiss this action. Their motion is granted on the grounds that this lawsuit is untimely and is also barred by a 2017 class action settlement.

## **Background**

The following facts are taken from the complaint and documents integral to the complaint. They are accepted as true for purposes of this motion.

Jenkins played basketball at Villanova University, where he was a student from 2013 to 2017. On April 4, 2016, with less than five seconds remaining, Jenkins made the winning basket in a NCAA Division I men's basketball championship game. That basket became known as "The Shot." Jenkins was featured on Good Morning America the next day and later traveled with his teammates to the White House to meet with then-President Barack Obama. The Shot is the most viewed video on the NCAA March Madness YouTube channel.

The NCAA is an organization composed of many colleges, universities and athletic conferences in the United States. It has adopted regulations governing all aspects of college sports. The complaint seeks damages for Jenkins to the extent that those regulations unlawfully limited the compensation he could have received for the use of his name, image, likeness and reputation ("NIL"), and unlawfully limited his compensation for his athletic services. Following extensive litigation, on July 1, 2021, the NCAA suspended enforcement of rules prohibiting NIL compensation from third parties.

Jenkins filed this action on April 5, 2025, and brings three claims. His first two claims plead that the defendants and their co-conspirators have violated § 1 of the Sherman Act by entering into horizontal and vertical contracts in restraint of trade to artificially depress the price paid to Jenkins for his NIL and for his athletic services, and to effectuate a horizontal group boycott of the plaintiff. In a third claim, the complaint seeks recovery from the defendants for unjust enrichment. The complaint seeks damages, a declaratory judgment and injunctive relief.

On July 3, the defendants filed a motion to dismiss. The motion was fully submitted on September 5. The plaintiff's opposition to the motion attached a proposed amended complaint which, among other things, withdrew requests for injunctive and declaratory relief and abandoned the claim for unjust enrichment.

In a three-page letter motion of September 15, the plaintiff requested an opportunity to file a sur-reply. That letter explains the points the plaintiff wishes to address in any sur-reply. The motion is denied; the defendants' reply appropriately responded to Jenkins' arguments in his opposition brief and a sur-reply is not warranted.

**Discussion**

The defendants move to dismiss the complaint on the grounds that its claims are barred by a settlement release, are time barred, and do not plausibly plead injury.  This Opinion reaches the first two grounds.  It is unnecessary to address the arguments regarding injury.

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  Doe, 100 F.4th at 94 (citation omitted).

I.   Settlement Release

The defendants move to dismiss all of Jenkins' claims for damages on the ground that they are barred by a class action

6

settlement in the NCAA Grant-In-Aid Cap Antitrust Litigation, which is referred to as the Alston litigation.  It is undisputed that Jenkins was a member of the Alston class and did not opt out of that litigation.

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (citation omitted).  The party moving to dismiss under Rule 12(b)(6) on res judicata grounds must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  Id. (citation omitted).  The doctrine of res judicata applies to monetary damages relief.  See Giannone v. York Tape & Label, Inc., 548 F.3d 191, 194 (2d Cir. 2008).

A settlement agreement operates as a final judgment for res judicata purposes.  See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002); Greenberg v. Bd. of Governors of Fed. Rsrv. Sys., 968 F.2d 164, 168 (2d Cir. 1992).  "It is well established that settlement agreements are contracts and must

7

therefore be construed according to general principles of contract law." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) (citation omitted).  "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Id. (citation omitted).  It is well established in this Circuit that class action releases executed in connection with a settlement agreement "may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 107 (2d Cir. 2005).  An identical factual predicate exists "where there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members."  TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 461 (2d Cir. 1982).  "The preclusive effect of a settlement is measured by the intent of the parties to the settlement." Greenberg, 968 F.2d at 168.

The Alston settlement grew out of antitrust actions brought in March 2014 by student-athletes against the NCAA and others.

These actions were consolidated before the Honorable Claudia Wilken under the caption NACC Grant-In-Aid Cap Antitrust Litigation. In December of 2017, Judge Wilken approved a settlement agreement as to damages ("Alston Settlement Agreement"). One of the three Alston settlement classes for such claims consisted of Division 1 men's basketball players, the class to which Jenkins belongs. The class was defined as

> All current and former NCAA Division I men's basketball student-athletes who, at any time from March 5, 2014 through the date of Preliminary Approval of this Settlement [which occurred on March 21, 2017], received from an NCAA member institution for at least one academic term (such as a semester or quarter) a Full Athletics Grant-In-Aid.

As stated earlier, the plaintiff does not dispute that he is a member of the class. In his proposed amended complaint, the plaintiff explains that he played basketball on a scholarship at Villanova, including in the two semesters after "the Shot."

The release of claims in the approved settlement ("Release") was broad and provided as follows:

> As of the Settlement Agreement's Effective Date, the Releasors will release the Releasees from any and all past, present and future claims, demands, rights, actions, suits, or causes of cation, for monetary damages of any kind (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively,

9

>    derivatively, or in any other capacity, ever had, now
>    have or hereafter can, shall or may have, <u>arising out
>    of or relating in any way to any of the legal,
>    factual, or other allegations made</u> in Plaintiffs'
>    Actions, <u>or any legal theories that could have been
>    raised</u> on the allegations in Plaintiffs' Actions.

(Emphasis supplied.)  The parties do not dispute that the Released parties include the NCAA and each of the defendants Jenkins has sued.

The Alston Settlement Agreement "permanently barred and enjoined [the class members] from instituting or prosecuting any of the Released Claims" and stated that the judgment embodying the settlement was "binding on and ha[d] res judicata and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the [classes]."

The doctrine of claim preclusion bars Jenkins' claims.  The Alston Settlement Agreement was an adjudication on the merits for the parties in this litigation.  The claims asserted here were or could have been raised in <u>Alston</u>.

Jenkins contends that his claims are not barred for three reasons, relying principally on a discussion in Judge Wilkin's decision in <u>House v. NCAA</u>, 545 F. Supp. 3d 804, 819-20 (N.D. Cal. 2021).  He contends that <u>Alston</u> was not based on the identical factual predicate because Jenkins challenges some rules not challenged in <u>Alston</u>, because he rests his claims on

10

different facts, and because he relies on facts that post-date Alston. Those post-Alston facts concern the impact on college sports of the NCAA's 2021 suspension of its Bylaw that prohibits athletes from receiving certain remuneration due to the athlete's NIL.

None of these arguments permits Jenkins to escape the effect of the Alston release and judgment. Jenkins was a student-athlete from 2013 to 2017. Therefore, any claims that he may have had are claims that arise from anticompetitive conduct that occurred during that period. The NCAA's suspension of a Bylaw in 2021 did not alter either the substance of his claims or the breadth of his release of those claims.

Similarly, Jenkins' narrow reading of the claims presented in Alston fails. The class in Alston and Jenkins both challenge the NCAA's framework for compensation of student-athletes that prevailed while Jenkins was at Villanova. The fact that Jenkins may have identified components of that framework, specifically two NCAA rules, that may not have been the specific focus of the Alston class pleading is immaterial. The Alston class released all claims that arise out of or that relate "in any way" to the allegations made in Alston, including "any legal theories that could have been raised" on the allegations in Alston. And, as already described, the doctrine of claim preclusion applies to

claims that could have been raised in the prior action.  See Wal-Mart, 396 F.3d at 107.

Jenkins relies heavily on a decision by the court who presided over Alston.  In House, Judge Wilken addressed the scope of the Alston settlement release on a plaintiff similarly situated to Jenkins, Tymir Oliver.  545 F. Supp. at 819.  Oliver was the only named plaintiff in House who was also in the Alston damages class, and the court held that Oliver's claims were not barred by the release because they were not based "on the identical factual predicate as that underlying the claims in the settled class action."  Id. (citation omitted).  It explained that Oliver's claims were "based on (1) challenges to some rules that were not challenged in Alston; (2) a legal theory that was not raised in Alston, which requires different facts from those litigated in Alston; and (3) new facts that post-date Alston."  Id.  This analysis is not persuasive.  It does not give due weight to the breadth of the release and does not apply the law of claim preclusion set forth above.  The recent decision by the Honorable Paul Engelmayer gives appropriate effect to the terms of the release and to the governing law.  See Chalmers v. NCAA, No. 24 CIV. 5008 (PAE), 2025 WL 1225168, at **15-16 (S.D.N.Y. Apr. 28, 2025).  Chalmers held that the Alston release barred claims like those brought by Jenkins and that the principles of

12

claim preclusion would bar them as well.  Id.  Chalmers is persuasive and will be followed.

    II.  Timeliness

The defendants also move to dismiss this action as barred by the four-year statute of limitations for claims brought pursuant to the Sherman Act.  The defendants' motion will be granted on this ground as well.  A court may dismiss a claim on statute-of-limitations grounds at the pleadings stage "if the complaint clearly shows the claim is out of time."  Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir. 2021) (citation omitted).

Claims brought under § 1 of the Sherman Act are subject to a four-year statute of limitations.  See 15 U.S.C. § 15b.  "A cause of action for an alleged antitrust violation accrues when a defendant commits an act that injures" a plaintiff.  Phhhoto Inc. v. Meta Platforms, Inc., 123 F.4th 592, 603 (2d Cir. 2024).  The cause of action "ordinarily accrues as soon as there is an injury to competition."  Higgins v. New York Stock Exch., Inc., 942 F.2d 829, 832 (2d Cir. 1991).  Where there is a continuing violation, however, "each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again."  Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997) (citation omitted).  In US Airways, Inc. v.

13

Sabre Holdings Corp., the Second Circuit held that to restart the statute of limitations period, however, the "overt act" must be of a "new and independent" nature such that an additional injury accumulates on the plaintiff. 938 F.3d 43, 68-69 (2d Cir. 2019) (adopting rule in the Sixth, Eighth, and Ninth Circuits). Applying that rule, US Airways held that the performance of a contract is a manifestation of the original act of executing the contract, rather than a new or independent overt act. Id.

Jenkins' claims accrued in 2013, when his athletic career began at Villanova and he was first subjected to the NCAA rules that he challenges in this action. Jenkins acknowledges that those rules were unchanged while he was a student at Villanova. The statute of limitations for Jenkins' claims therefor had run in 2017.

Jenkins disputes the date on which his claims accrued. He argues that his antitrust claims accrued anew each semester when he signed a new scholarship agreement.[1] In his proposed amended complaint attached to his opposition brief, Jenkins adds allegations that he signed a scholarship agreement for the two

---

[1] In his opposition brief, Jenkins disclaims the relevance of all other "continuing use" allegations in his pleadings to his timeliness arguments.

semesters of his senior year at some time after April 2016, or in the summer after his junior year.  Accordingly, Jenkins contends that the statute of limitations had not expired when the complaint in House was filed.  And therefore, Jenkins' argument follows, his claims were tolled under the American Pipe doctrine for a sufficient period of time to make the filing of this lawsuit timely.[2]

Jenkins' attempt to avail himself of American Pipe tolling by extending the date on which his antitrust claims accrued fails.[3]  Jenkins does not explain how, if at all, the scholarship terms he allegedly signed in 2016 differed from the terms to which he agreed when he started his career at Villanova as a freshman in 2013.  Because the NCAA rules did not change during his collegiate career, the proposed amended complaint fails to allege that the 2016 scholarship agreement "inflict[ed] new and accumulating injury on [Jenkins]" from the defendants' conduct.

---

[2]  Under the tolling rule first enumerated in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint."  China Agritech v. Michael H. Resh, 584 U.S. 732, 735 (2018).

[3]  Jenkins' proposed amended complaint does not specify when Jenkins signed the scholarship agreement for the two semesters of his senior year.  Even if the agreement constituted a new overt act, the agreement had to be signed after June 15, 2016, for Jenkins' claims to benefit from American Pipe tolling.

15

US Airways, 938 F.3d at 68 (citation omitted).  The renewal or extension of a contract, without more, is no less a manifestation of the original act of executing that contract than the performance of it.

Jenkins next argues that a restart of the limitations period is warranted under the Second Circuit's decision in In re WorldCom, which held that American Pipe tolling applies to class members who file individual suits before class certification is resolved.  496 F.3d at 254.  That holding does not conflict with the application of the US Airways rule here.  Jenkins' citation to language in O'Bannon v. Nat'l Collegiate Athletic Ass'n, 802 F.3d 1049 (9th Cir. 2015), stating that NCAA rules that deny players the opportunity to receive compensation for the use of their NIL in video games injure them, is equally irrelevant. Id. at 1069.  At bottom, Jenkins does not point to any new conduct by the defendants, let alone conduct establishing an injury additional to that which he incurred in 2013.  Dismissal is therefore warranted on timeliness grounds as well.

## Conclusion

The defendants' September 5, 2025, motion to dismiss is

granted.

Dated:  New York, New York
        December 15, 2025

                                     _____
                                         DENISE COTE
                                    United States District Judge